STATE OF MAINE                          UNIFIED CRIMINAL COURT
AROOSTOOK, ss                           DOCKET NO. AROCD-CR-2022-00085


STATE OF MAINE                    )
                                  )
        v.                        )      ORDER ON MOTION
                                  )      FOR SANCTIONS
TONY JACKSON                      )

On August 4, 2023, the Defendant filed a motion for sanctions dated related to (1) the alleged failure of the State's to provide discovery in accordance with the discovery rules, and (2) the alleged failure to provide exculpatory information and suppression of that evidence. Included in the motion is a motion for contempt against the District Attorney's office related to alleged disclosure of confidential DHHS records and failure to comply with the court's request for testimony by one of its agents. The State filed a response to that motion for sanctions on August 21, 2023. The court has reviewed the motion, the response, and considered the events at trial that were referenced therein. The court finds and orders as follows:

The Defendant was charged in a 5-count indictment dated May 12, 2022, with the following offenses:

1. Aggravated Assault – 17-A M.R.S. §208(1)(C) – Class B;

2. Refusing to Submit to Arrest - 17-A M.R.S. §751-B(1)(B) – Class D;

3. Endangering the Welfare of a Child - 17-A M.R.S. §554(1)(C) – Class D;

4. Domestic Violence Reckless Conduct - 17-A M.R.S. §211-A(1)(A) – Class D; and

5. Domestic Violence Assault - 17-A M.R.S. §207-A(1)(A).

This matter proceeded to jury selection on June 5, 2023 and a jury trial began on June 8, 2023.

## Alleged Discovery Violations

The Defendant contends that the State failed to provide the names, dates of birth, and addresses of witnesses whom the State intended to call at trial. Specifically, the Defendant contends that the State did not provide: the alleged victim's address, the date of birth for Amy Theriault, and the identity of a custodian or qualified witness for authentication of the medical records.

Rule 16(b)(7) states: "[p]romptly after becoming aware of any material that the defendant wishes to review in order to prepare a defense, and that should have but has not yet been provided as automatic discovery pursuant to this Rule, the defendant must make a written request to the State for the material. The State must respond to the request, in writing, within 14 days." *M.R.Un.Crim.P. 16(b)(7)*. The Defendant contends that he delivered his second written discovery request to the State on March 28, 2023. Neither the first nor this alleged second request has been provided to the court. The Defendant contends the State did not respond to the request.

On April 4, 2023,[1] the Defendant emailed the State seeking the alleged victim's address and the date of birth for witness Amy Theriault, as well as any statements or summaries of statements by the alleged victim and Amy Theriault. The State promptly responded by email claiming that the State did not have any other address for the alleged victim as she was in DHHS custody. The State further provided the date of birth for

---

[1] Within 14 days from the alleged second request.

Amy Theriault and represented that the State would disclose any exculpatory information if and when the State had any further communications with Amy Theriault. See, *M.R.Un.Crim.P. 16(b)(5)*("If additional material that would have been furnished to the defendant as automatic discovery comes within the possession or control of the attorney for the State after the timeframes listed in subdivision (b)(1)-(4), the attorney for the State shall so inform the defendant within 14 days thereafter").

As the State did not list any custodian or qualified witness to authenticate the medical records provided, the court infers that the State did not intend to call such a witness. See, *State v. Jones*, 2019 ME 33, ¶ 14, 203 A.3d 816, 821 (Discussing the admission of a hospital record pursuant to section 16 M.R.S. §357). If that is the case, there is no discovery violation.

The State promptly provided to the Defendant the medical records of the alleged victim that were in the State's possession as soon as the State was made aware by the Defendant's attorney that she had not received the medical records. The State did not come into possession of certified medical records until June 7, 2203, which were then provided to the Defendant. See, *M.R.Un.Crim.P. 16(b)(5)*. To the extent the Defendant contends the copy of the records that was not certified hindered his ability to prepare for trial, the court finds this contention to be without merit. The Defendant had the records nearly three months in advance of the commencement of the trial.

Based on the foregoing, the court finds that the Defendant has failed to show any discovery violations related to the information referenced above. The court shall address the exculpatory information identified at trial below.

## Exculpatory Information

During the trial, the alleged victim testified that she pushed the Defendant out of her room prior to him having any physical contact with her. *Tr. T. 92.* The alleged victim testified on cross examination that she told the State that she pushed the Defendant first when she "came here for, like, a practice court thing." *Tr. T. 107.* At sidebar, the Defendant raised the issue of the State's failure to disclose this exculpatory information prior to trial. The State initially contended that the alleged victim did not push the Defendant first, just that she told him to leave the room. *Tr. T. 109.* At that point in the trial, the court deemed it necessary to ascertain whether the State failed to disclose exculpatory information, whether those present simply did not hear the alleged victim's statement about the push, or whether the witness may be mistaken or testifying untruthfully. The State claimed that there were no victim witness advocate notes from the "court practice" but that the advocate was "present though, so we can inquire." *Tr. T. 110.* When the court sought to begin the inquiry, the victim witness advocate, who was not under subpoena refused to enter the courtroom. *Tr. T. 120.* After a recess, the State conceded that exculpatory information regarding the initial push was received by the State and the information had not been disclosed to the Defendant. *Tr. T. 121-120.*[2] Having conceded that the State received the exculpatory information, any further inquiry of the victim witness advocate was unnecessary. The court could have but did not order

---

[2] The State's contention in its response that the "State did not concede that it withheld information, but instead, conceded that the alleged victim may have made the statement although it did not have any recollection of it" is not supported by the transcript of the proceeding. *Tr. T. 121-122.* While the court did have a real question as to whether the alleged victim *actually* did tell the State about the push earlier in the week, the concession put the issue to rest.

the victim witness advocate to testify over the State's objection in light of this concession. The court agrees with the Defendant that there was no apparent basis for the victim witness advocate to refuse offer testimony, but further declines to consider use of its contempt powers related to the situation.

The Defendant moved for a mistrial. The court declared a mistrial due to the cumulative effect of the conduct of the State in referencing foster care of the alleged victim in its opening statement and the suppression of the exculpatory statement related to the initial push of the Defendant by the alleged victim. *Tr. T. 138.*

Regarding the opening statement, the court sustained the objection and gave a curative instruction to the jury to ensure the jurors were aware that the opening statements were not evidence to be considered. *T. Tr. 72, 76.* The Defendant contends that the State thereafter violated the court's instruction to stay away from [the issue of any] DHS removal [of the alleged victim from the home]. The State did ask general questions about where the alleged victim was living, but the elicited information was necessary to set the scene and establish the jurisdictional authority of the court over the offense. There was no mention, either in the questions or answers, of DHHS removal. There was no objection from the Defendant to any portion of the aforementioned questioning. While the State certainly could have utilized the opportunity to simply lead the witness, the court finds the inquiry was permissible and certainly did not rise to the level of contempt.

The court has already determined that the State had evidence favorable to the Defendant, that it was not disclosed and therefore suppressed, and that the Defendant

was prejudiced by the lack of disclosure. *Tr. T. 137-138; See, State v. Twardus*, 2013 ME 74, ¶32, 72 A.3d 523, 533. The only remaining issue for the court is to determine whether the declaration of a mistrial is sufficient to address the discovery violation and consistent with due process or whether the court should provide further remedy.

"[W]hen faced with a discovery violation, 'the trial judge has broad discretion in choosing the form of sanction to impose, if any at all.'" *M.R.Un.Crim.P. 16* (Comments)(*Quoting, State v. Poulin*, 2016 ME 110, ¶27, 144 A.3d 574). Although the State failed to disclose that the alleged victim *acknowledged* that she pushed the Defendant out of her room, the fact that she pushed him first was known to the Defendant. Even during docket call in March of 2023, the Defendant noted to the court that the evidence would generate a self-defense instruction and such an instruction would therefore be requested by the Defendant. What was not known to the Defendant was that the alleged victim *admitted* that she pushed him first. The result was that the trial proceeded better than was originally expected for the Defendant, as he was unaware of the concession until the alleged victim's testimony.

The Defendant moved for a mistrial and that motion was granted. The additional delay subsequent to the granting of the mistrial has been in part due to the Defendant's desire to present the motion for further sanctions and incorporated motion for contempt for consideration. The court finds that under the totality of the circumstances, further sanction is not appropriate.

Defendant's Motion for Sanctions is DENIED.

Defendant's Motion for Contempt is DENIED.

This matter shall proceed directly to jury selection and trial.

Dated: September 11, 2023

_____
Justice, Maine Superior Court